# WILLIAM WALERIUS v. M. L. FOLDESI.[1]

December 22, 1939.

No. 32,279.

*H. A. Irwin,* for relator.

*R. G. Shepley,* for respondent.

HOLT, JUSTICE.

*Certiorari* to review an award of the industrial commission.

The parties are in agreement that respondent entered relator's employ in May, 1936, and so continued up to August 28, 1937. Respondent's duties were to attend the ordinary gasoline filling station, operated by relator at Belle Plaine, this state, and also drive a delivery truck; that on August 28, 1937, respondent was accidentally injured in the operation of the truck, such accidental injury arising out of and in the course of his employment; and that the compensation, if lawfully awarded, is in the proper amount. It is undisputed that on August 8, 1935, relator elected not to be bound by part II of the workmen's compensation act, and on August 9, 1935, duly filed a copy of such election with the industrial commission, where it has ever since remained on

[1]Reported in 289 N. W. 55.

file. The referee held the election was vacated and rendered ineffective by virtue of L. 1937, c. 64 (3 Mason Minn. St. 1938 Supp. §§ 4272-1 to 4272-10), and hence awarded compensation. On appeal to the industrial commission the findings of the referee were adopted except two, and in lieu of those two the commission found and substituted therefor these:

"II. That on August 8, 1935, said employer elected not to be bound by the provisions of part II of the workmen's compensation act, as the same was then in force and effect, but neglected to post and keep posted in a conspicuous place, in his place of business, such notice of election not to be bound.

"III. That said notice of election, by virtue of the employer's failure to keep the same posted as required by law, was inoperative and without force and effect as to said employe on August 28, 1937, the date of his accidental injury."

The assignments of error are all directed to the proposition that the evidence does not support the here pivotal finding of fact that relator "neglected to post and keep posted, in a conspicuous place, in his place of business," the notice of his election not to be bound by part II of the compensation act. The evidence may be said to be conclusive that at some time such notice was posted on the wall of the small filling station above the desk holding the cash register, so that on opening the door leading into the office or main room of the place of business the notice faced the person entering. It was a conspicuous place. The requirement to "keep posted" the notice is the vital part of the finding supporting the award. To that issue the trial was directed. O'Rourke v. Percy Vittum Co. 166 Minn. 251, 255, 207 N. W. 636, indicates the importance of "keeping the notice posted." Of course it is not to be successfully asserted that a temporary taking down of a posted notice of this sort for painting or cleaning purposes destroys or cancels the election of the employer not to be bound; but the statute, 1 Mason Minn. St. 1927, § 4271, required the notice to be "kept posted." This is as important as any of the

other steps prescribed in order to keep an employer not bound by part II of the workmen's compensation act.

As to whether the evidence sustained the findings II and III of the commission above quoted, these observations are made: Respondent worked for relator in and about this small filling station for a year and three months and was in and out of this room where the notice was supposed to be posted many times daily. He testified it was not posted where relator claims it was or at any other place. Relator admits that his son and respondent in May, after he began his employment, painted the inside walls of the filling station. He says one of the two must have taken the notice down. The son did not testify. Relator does not claim that he put the notice up after the paint dried. Respondent positively denied that it was there at any time. Relator called as his principal witnesses Haas, a painter, and Rowland, a plumber. Haas testified that he painted the inside walls of the filling station in July, 1936, and that he saw the notice and took it down. He does not state that he put it back after the paint was dry nor does relator. Relator testified that he painted the inside walls of the station twice a year because they got so dirty. At that, it is strange that, having painted them in May, 1936, he should hire Haas to paint them again in July, 1936. From the questions asked Haas by relator's attorney the commission could infer that Haas did the painting in July, 1935, instead of 1936. The plumber, in the latter part of 1936, replaced a frozen radiator in the toilet back of the wall on which the notice was claimed to be posted. He testified he then saw the notice posted. He again did some work there in December, 1937, after a fire. At that time he claims that the fire had burned off the notice entirely. Two other witnesses were called by relator, but their testimony was of little value. The brother and brother-in-law of respondent, who often visited at the filling station, in a way corroborated him that they saw no posted notice on its walls. The brother gave this testimony, which relator did not take the stand to deny:

Q. "And he [relator] told you that he didn't have this sign up?

A. "Yes.

Q. "When was that conversation?

A. "That was about a week, I can't tell you the date, about a week after the accident.

Q. "Did you see this sign at that time?

A. "No.

Q. "Did he point out the particular type of sign he had reference to?

A. "No. He told me he always had a sign and he didn't know where it was now. Those were his exact words."

Relator testified that when he hired respondent he pointed out the sign or posted notice to him and explained that he was not responsible for accidents under the compensation law. This the respondent positively denied.

It is true the dissenting commissioner characterized respondent's testimony as "negative." That, however, was for the triers of fact to weigh and consider in making the findings. From what is above called attention to in the record, it is plain that this, an appellate, court is not warranted in holding that the findings challenged are without adequate support.

The counsel for relator contends that the commission, when concluding that the referee erred in holding that L. 1937, c. 64, in effect when respondent met the accidental injury, abrogated or rendered ineffective the relator's election not to be bound, should have re-referred the matter to the referee for proper findings. The commission is the ultimate trier of facts and has the power to annul, modify, or amend any findings made by its referee. On appeal from its referee, the commission determines whether or not the record made is as complete as is deemed necessary for it to arrive at a just award, and if further evidence seems desirable to again refer the case to the same or another referee. There is no abuse shown in the commission's action in substituting findings II and III in place of the two made by the referee.

The award is affirmed.

STONE, JUSTICE (dissenting).

The referee, whose decision was the only one based upon personal hearing of the evidence, found that the employer had made an effective election not to be bound by part II of our compensation act. Not until after our decision in Schuler v. Schuler Candy Co. 204 Minn. 456, 283 N. W. 781, did it occur to anyone that a contrary finding should be made. Then, without any rehearing and upon the cold record, the two lay members of the industrial commission reversed the determinative finding of the referee and concluded very belatedly that the notice had not been kept posted. I think they were wrong in basing that decision upon purely negative testimony, which was opposed by the obviously greater weight of affirmative testimony.

Of course it is correct to say that there is some evidence supporting the award. But it is respectfully submitted that, because of the peculiar circumstances of the case, it ought to go back for a rehearing on the merits, with a direction to the commission to give proper regard to the recognized difference between affirmative and negative evidence.